UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
VITANTONIO GIUSTINO,

        Plaintiff,

        - against -

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
------------------------------------------------------------X

**MEMORANDUM AND ORDER**
15-CV-2471 (RRM)

ROSLYNN R. MAUSKOPF, United States District Judge.

Plaintiff *pro se* Vitantonio Giustino ("Giustino"), proceeding *in forma pauperis*, brings this action against defendant Commissioner of the Social Security pursuant to 42 U.S.C. § 405(g), seeking review of defendant's determination that Giustino is not entitled to disability insurance benefits under Title II of the Social Security Act. Defendant has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Mot. J. (Doc. No. 13).) For the reasons set forth below, defendant's motion is granted.

## BACKGROUND

### I. Procedural History

On March 29, 2012, Giustino applied for Social Security disability benefits, alleging disability beginning in March 11, 2011.[1] (Admin. R. (Doc. No. 16) at 14, 143, 166.) Giustino alleged that he stopped working because of his conditions on March 1, 2011. (*Id.* at 166.) On August 10, 2012, Giustino's disability claim was denied. (*Id.* at 52, 56, 60.) Upon an informal remand to the State agency, a revised determination was issued denying Giustino's claim. (*Id.* at 53.)

---

[1] Giustino had previously filed for disability benefits in 2008, but voluntarily withdrew his request. (Admin. R. (Doc. No. 16) at 50.)

On January 15, 2014, Administrative Law Judge ("ALJ") Kieran McCormack presided over the hearing at which Giustino, who was represented by counsel, and an impartial vocational expert testified. (*Id.*) On February 26, 2014, the ALJ issued a decision finding that Giustino was not disabled within the meaning of the Social Security Act. (*Id.* at 9, 15.) On March 25, 2015, the Appeals Council denied Giustino's request for review. (*Id.* at 1.) On April 27, 2015, Giustino filed the instant action. (Compl. (Doc. No. 1).)

Before the Court is the Commissioner's Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). The Commissioner maintains that the ALJ correctly found that Giustino was not disabled because he did not have a severe medically determinable impairment, "which lasted or could be expected to last for a continuous period of at least twelve months." (Def.'s Mem. Supp. Mot. J. ("Def.'s Mem.") (Doc. No. 14) at 5, 16.) Giustino contends that the ALJ's decision was "erroneous, not supported by substantial evidence on the record and/or contrary to the law." (Compl. at 2.) For the reasons set forth below, the Commissioner's motion is granted.

## II. Administrative Record

### A. Medical Evidence Prior to Giustino's March 11, 2011 Onset Date

#### i. Lutheran Medical Center – Physical Examination

Giustino received treatment from Lutheran Medical Center ("Lutheran") on December 10, 2007, for moderate, acute right-sided rib pain. (*Id.* at 248.) He told hospital staff that he noticed blood when coughing and also experienced pain in his right calf. (*Id.*) Giustino denied palpitations, fevers, or shortness of breath, but reported being a heavy smoker. (*Id.*) An examination of Giustino found him "[s]table for disposition" with no "[o]bjective findings that are life or limb threatening." (*Id.*) An ultrasound of Giustino's right leg was normal, with edema

2

present. (*Id.* at 249.)  Chest x-rays revealed chronic obstructive pulmonary disease and a prominent right pulmonary artery. (*Id.*)  A chest CT scan revealed right axillary and hilar adenopathy with lingular and bibasilar atelectasis. (*Id.*)  Physicians diagnosed rib pain and costrochondritis. (*Id.*)  That same day, he was discharged. (*Id.* at 251.)  The hospital staff recommended that he follow up with his regular doctor, HMO, or Clinic. (*Id.*)

Subsequently, from March 6 to 10, 2008, Giustino was hospitalized at Lutheran due to pulmonary embolism ("PE") and right leg DVT. (*Id.* at 223.)  Giustino complained of pain in his right calf, and a March 5, 2008 CT scan, done while Giustino was an outpatient, revealed a PE in the right pulmonary artery and several of its branches down to the right middle and lower lobe, with branches of the left pulmonary artery and left lower lobe nodule. (*Id.*)  An ultrasound revealed a DVT in the right distal superficial femoral vein and popliteal vein, and a chest x-ray showed bibasilar atelectasis and hilar prominence. (*Id.*)  An examination of Giustino was normal and blood testing was within normal limits. (*Id.*)  Giustino was treated with a heparin drip and coumadin, and discharged with instructions to follow-up with his primary care physician. (*Id.* at 223–24.)

### ii. Dr. Angelo L. Magno – Treating Physician

On July 17, 2009, treating physician, Angelo L. Magno, M.D., completed a Medical Source Statement of Ability to do Work-Related Activities ("Physical") in connection with Giustino's 2008 application for benefits, which had been withdrawn at Giustino's request. (*Id.* at 50, 266–71.)  Dr. Magno opined that Giustino could occasionally lift up to 20 pounds, and never anything heavier. (*Id.* at 266.)  Giustino could sit for one hour, stand for 30 minutes, and walk for 20 minutes continuously or total in an eight-hour workday. (*Id.* at 267.)  He did not need a cane. (*Id.*)  He could occasionally reach, handle, and push or pull, and never finger or feel or

3

operate foot controls. (*Id.* at 268.) Giustino could occasionally balance and climb stairs and ramps. (*Id.* at 269.) He could never climb ladders or scaffolds, stoop, kneel, crouch, or crawl. (*Id.*) Giustino could never work around: unprotected heights; humidity and wetness; dust, odors, fumes, and other pulmonary irritants; extreme cold or heat; or vibrations. (*Id.* at 270.) He needed a quiet work environment. (*Id.*) Dr. Magno stated that Giustino could travel without a companion, ambulate without an assistive device, walk a block at a reasonable pace on rough or uneven surfaces, use public transportation, climb a few steps at a reasonable pace with the use of a single handrail, and care for his personal hygiene. (*Id.* at 271.) Giustino could not prepare a simple meal and feed himself or sort, handle, or use paper/files. (*Id.*) Dr. Magno affirmed that these limitations "lasted or will [] last for 12 consecutive months." (*Id.*)

### B. Medical Evidence After Giustino's March 1, 2011 Onset Date

#### i. Dr. Angelo L. Magno – Treating Physician

On January 9, 2012, Giustino saw Dr. Magno who completed an x-ray of Giustino's right hip. (*Id.* at 265.) The x-ray showed a vague lucent lesion in the proximal femoral diaphysis, though there was no acute fracture or dislocation. (*Id.*) Dr. Magno recommended further imaging. (*Id.*)

On April 10, 2012, Dr. Magno completed a questionnaire and Range of Motion Chart. (*Id.* at 210–16.) Dr. Magno treated Giustino for a hematoma on his left heel and a history of DVT. (*Id.* at 210.) Giustino's current symptoms were swelling on the left heel. (*Id.*) Dr. Magno reported no abnormalities in Giustino's mental status and no interferences with communication. (*Id.* at 212.) Dr. Magno also reported that Giustino did not have limitation with regards to his ability to lift and carry, stand and/or walk, sit, or push and/or pull. (*Id.* at 213–14.)

In the Range of Motion Chart, Dr. Magno found Giustino had full range of motion of his shoulders, elbows, wrists, knees, hips, and spine. (*Id.* at 215–16.)

### ii. New York Methodist Hospital

On January, 25, 2012, Giustino presented at New York Methodist Hospital ("Methodist") of pain in his right calf. (*Id.* at 276.) The doctors noted Giustino's history of DVT and that the pain Giustino was experiencing was "similar to the last DVT." (*Id.* 276–77.) On physical examination the following day, Giustino exhibited a normal range of motion and strength. (*Id.* at 278.) His right leg was mildly swollen but did not show signs of edema, redness, or pain on palpation. (*Id.*) Laboratory reports were unremarkable, although he had a low red blood cell count. (*Id.* at 273, 279.) A chest x-ray revealed no active disease. (*Id.* at 276.) Giustino was admitted and treated with lovenox and coumadin. (*Id.* at 279.) Methodist discharged him on January 30, 2012. (*Id.* at 273.)

### iii. Dr. Susie Chow – Consultative Internist

On July 2, 2012, Dr. Susie Chow performed a consultative internal medicine examination on Giustino. (*Id.* at 217–20.) Giustino reported pain in his right hip since September or October 2011. (*Id.* at 217.) Giustino told Dr. Chow that x-rays of his right hip were normal and his doctor diagnosed inflammation. (*Id.*) Results of the lumbosacral spine x-ray were still pending. (*Id.*) Giustino could not describe the character of the pain but rated it at nine out of ten. (*Id.*) At the time of the consultation, Giustino had stopped taking pain medication because of rectal bleeding. (*Id.*) He had been on coumadin due to a history of DVT. (*Id.*) Dr. Chow noted Giustino's hospitalizations at Lutheran in 2007 and Methodist in 2012 due to DVT. (*Id.*) Giustino mentioned that he had suffered from varicose veins in his left leg for fifteen years and his right leg for five years. (*Id.*) Giustino denied having high blood pressure, diabetes, heart

5

disease, asthma, emphysema, or seizures. (*Id.*) Giustino reported that someone else did his cooking, cleaning, and laundry, but he did some shopping and showered and dressed himself. (*Id.* at 218.)

At the consultation, Giustino had a normal gait and stance, and used no assistive device. (*Id.*) Dr. Chow reported that Giustino was in no acute distress and was able to walk, squat, and stand normally. (*Id.*) Giustino needed no help changing for the examination or getting on and off the examination table. (*Id.*) He rose from a chair without difficulty and had full range of motion of his cervical and lumbar spine, shoulders, elbows, forearms, wrists, hips, knees, and ankles. (*Id.* at 218–19.) There was no scoliosis, kyphosis, or abnormality in the thoracic spine. (*Id.* at 219.) His joints were stable and non-tender without redness, heat, swelling, or effusion. (*Id.*) Giustino's deep tendon reflexes were normal throughout his upper and lower extremities. (*Id.*) He had full strength in his extremities, his extremities had no cyanosis, clubbing, or edema, and his pulse was normal. (*Id.*) Giustino had mild varicosities in both legs, without trophic changes or muscle atrophy. (*Id.*) Giustino had intact hand and finger dexterity and full grip strength. (*Id.*)

Dr. Chow diagnosed Giustino with a history of right hip pain, DVT, and varicose veins in his lower extremities. (*Id.*) Dr. Chow reported that Giustino's prognosis was fair and opined that Giustino had "no physical restrictions." (*Id.*)

### iv. Dr. Mary Lanette Rees, M.D. – Consultative Case Analysis

On September 24, 2012, Dr. Mary Lanette Rees, M.D., a state agency medical consultant, reviewed the evidence of record and opined that Dr. Magno's assessment set forth in his 2009 questionnaire was not supported by the current objective medical evidence. (*Id.* 286; *see also id.* at 266–71.)

6

**C. Non-Medical Evidence**

In a Function Report dated May 1, 2012, Giustino reported that, because of his injuries, he dressed slowly and did not bathe frequently, but otherwise did not have trouble with personal care. (*Id.* at 172–73.) During the day, Giustino would eat, take medications, read the newspaper, watch television, rest, take short walks, and talk on the phone. (*Id.* at 172.) He reported that he had trouble sleeping at times. (*Id.*) Giustino prepared easy, fast food two to three times a week, but found it difficult to stand long enough to prepare meals. (*Id.* at 173.) He drove very short distances and shopped for light groceries one to two times a week. (*Id.* at 175.) He reported that he needed help with heavy household work. (*Id.* at 174.)

Giustino explained that his condition prevented him from lifting heavy objects. (*Id.* at 176.) He could only stand and sit for short periods, he could not walk long distances, and climbing stairs was "nearly impossible." (*Id.* at 176–77.) Giustino further listed difficulty in kneeling, squatting, and reaching objects, and noted that sometimes his fingers would lock. (*Id.* at 177.) He reported that he was limited to 30 percent hearing in his left ear. (*Id.*) Giustino indicated that he used pressure stockings, a back support belt, wrist and ankle supports, a hearing aid, and a brace/splint. (*Id.* at 178.) Only the support stockings were prescribed by a doctor. (*Id.*) Giustino wrote that, "depend[ing] on [his] discomfort," he had trouble paying attention. (*Id.*) It was hard for him to hear spoken instructions, though he could follow written instructions. (*Id.*) Giustino further reported that he had difficulty getting along with people in authority and reported that stress or changes in schedule caused him tension and anxiety. (*Id.* at 178–79.)

Giustino reported daily pain in his right leg, which he described as numbness from his hip to his foot, which radiated to his lower back. (*Id.* at 179–80.) Giustino stated "anything (including sitting)," caused him pain. (*Id.* at 180.) He took sulindac, cyclobenzaprine, and

tramadol for the pain.  (*Id.*)  Giustino's side effects included constipation, dizziness, and sleepiness.  (*Id.* at 181.)

### D. The Administrative Hearing

On January 15, 2014, ALJ McCormack presided over Giustino's hearing at the SSA Office of Disability Adjudication and Review in Brooklyn, New York.  (*Id.* at 24.)  Giustino, represented by an attorney, testified at the hearing, as did Darren K. Flomberg,[2] an impartial vocational expert.  (*Id.* at 24–46.)

#### i. Giustino's Testimony

Giustino testified that he worked as a maintenance and construction professional from January 1984 through March 2011, including a period of self-employment beginning in 2004.  (*Id.* at 27–32.)  Apart from demolition and repairs, Giustino also did electrical and plumbing work.  (*Id.* at 41.)  Giustino explained that in March 2011, he stopped working because of leg pain, an inability to tolerate dust from the construction, and a susceptibility for flu-like symptoms.  (*Id.* at 31, 40.)  He also testified that he had chest pain.  (*Id.* at 33.)  Giustino reported that his hospitalization in 2007 was due to "spitting up blood" and swollen legs.  (*Id.*)  Subsequently, Giustino received a vein enclosure operation, but still had varicose veins.  (*Id.* at 34.)  Giustino stated that, at the time of the hearing, he had stopped taking coumadin and he "once in a while" took prescription "pain killer[s]."  (*Id.* at 34.)

When asked to explain a normal day, Giustino stated that he walked almost three miles daily, which made him feel better.  (*Id.* at 35–36.)  He reported difficulty showering, but bathed and dressed himself.  (*Id.* at 36.)  Giustino stated that he rarely cooked or did household chores.  (*Id.* at 37.)  He testified that he shopped for clothes and groceries and drove several times a

---

[2] Mr. Flomberg's name is spelled phonetically in the ALJ's hearing transcript – Flaumberg.  (*See id.* at 22; 132.)

week, although he reported trouble driving long distances. (*Id.* at 37–38.) When not driving, Giustino took public transportation with some difficulty. (*Id.* at 38.)

### ii. The Vocational Expert's Testimony

Impartial vocational expert Darren K. Flomberg also testified at Giustino's hearing. (*Id.* at 40–45.) He categorized Giustino's prior work as that of a building maintenance repairer. (*Id.* at 42.) The ALJ posed three main questions. First, the ALJ asked whether Giustino had acquired transferrable skills for light work, which Mr. Flomberg answered affirmatively. (*Id.* at 43.) Second, the ALJ asked whether Giustino's skills as a building maintenance repairer were transferrable to any sedentary jobs, requiring minimal vocational adjustments. (*Id.*) Mr. Flomberg testified that there were no similar sedentary jobs. (*Id.*) Third, the ALJ asked whether Giustino could continue to perform his "past relevant work at medium," which Mr. Flomberg testified that he could not. (*Id.* at 43–44.)

As described below, the ALJ determined that, based on the medical evidence, Giustino was not severely impaired. (*Id.* at 14–18.) Accordingly, the ALJ denied Giustino's claim, finding that Giustino was not disabled during the relevant time period and could perform existing jobs in the national economy. (*Id.*)

### E. The Appeals Council

Giustino appealed the ALJ's ruling on the basis that the "decision of the ALJ [was] not supported by substantial evidence." (*Id.* at 5.) The Appeals Council denied the request. (*Id.* at 1.)

9

**STANDARD OF REVIEW**

I. **Review of Denial of Social Security Benefits**

The Court does not make an independent determination about whether a claimant is disabled when reviewing the final determination of the Commissioner. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "may set aside the Commissioner's determination that a claimant is not disabled only if the [ALJ's] factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "'[S]ubstantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (internal quotation marks omitted). "If there is substantial evidence in the record to support the Commissioner's factual findings, they are conclusive and must be upheld." *Stemmerman v. Colvin*, No. 13-CV-241, 2014 WL 4161964, at *6 (E.D.N.Y. Aug. 19, 2014) (citing 42 U.S.C. § 405(g)). "This deferential standard of review does not apply, however, to the ALJ's legal conclusions." *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 342 (E.D.N.Y. 2010). Rather, "[w]here an error of law has been made that might have affected the disposition of the case . . . [an ALJ's] failure to apply the correct legal standards is grounds for reversal." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted).

## II. Eligibility for Disability Benefits

To qualify for disability insurance benefits, an individual must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). This requires a five-step analysis for determining whether a claimant is disabled:

> [1] First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> [2] If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.
>
> [3] If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him *per se* disabled.
>
> [4] Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.
>
> [5] Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quoting *DeChirico v. Callahan*, 134 F.3d 1177, 1179–80 (2d Cir. 1998)); *see also* 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proof for the first four steps of the analysis, but the burden shifts to the Commissioner for the fifth step. *See Talavera*, 697 F.3d at 151.

# DISCUSSION

## I. The ALJ's Decision

The ALJ found that Giustino failed to meet his burden of demonstrating that he had a severe impairment or combination of impairments. (Admin. R. at 15.) Here, the ALJ properly engaged in the five-step analysis and his determinations are supported by substantial evidence. After finding that Giustino met the insured status requirements and that he had not engaged in substantial gainful activity since March 1, 2011, the ALJ proceeded to step two. At step two, Giustino was required to provide medical and other evidence to establish that he had an impairment or combination of impairments that were: (1) medically determinable; (2) severe; and (3) continuous for a period of at least twelve months. *Barnhart v. Walton*, 535 U.S. 212 (2002); *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *see also* 20 C.F.R. 404.1520(a)(4)(ii).

The ALJ concluded that Giustino suffered from a left heel hematoma, a right lucent lesion at the proximal right femoral diaphysis, episodes of DVT, and bilateral lower extremity varicose veins. (Admin. R. at 14.) However, the ALJ concluded that these impairments, either alone or in combination, did not significantly limit his ability to perform basic work-related activities for at least twelve consecutive months between March 2011 and February 26, 2014 (the date of the ALJ's decision). (*Id*. at 18.) Basic work activities involve the ability and aptitude to perform most jobs, including, but not limited to, the ability to walk, sit, stand, lift, push, pull, reach, carry, handle, see, hear, and speak. *Dixon v. Shalala*, 54 F.3d 1019, 1022 (2d Cir. 1995); 20 CFR § 404.1521(b). The ALJ noted that, while Giustino had a history of DVT with pain, PE, and a right leg lucent lesion, those issues quickly resolved upon short-term treatment. (*Id.* at 15–16.) The ALJ properly evaluated Dr. Magno's opinion under the regulations and accorded the April 2012 opinion controlling weight because it was from a treating physician. (*Id.* at 17.) *See*

20 CFR § 404.1527(c). Further, Dr. Magno's opinion was consistent with other medical evidence of record, including Dr. Chow's consultative examination. The ALJ accorded Dr. Chow's opinion "significant weight" because, while based on a one-time examination, it was "supported by commensurate examination, as well as the treatment record for the relevant period." (Admin. R. at 17, 217–20.)

The ALJ also considered , but gave little weight to, Dr. Magno's July 2009 opinion that found Giustino had several physical limitations, including limitations with respect to his ability to sit, stand, and walk. (*Id.* at 17, 266–71.) However, the ALJ properly concluded that it was made over one-year prior to Giustino's March 2011 alleged onset date, was not supported by current medical evidence, and was contradicted by the same doctor's 2012 opinion. (*Id.* at 17.) The ALJ also considered and gave "significant weight" to the opinion of Dr. Rees, the state agency medical consultant, who reviewed the record and opined that Dr. Magno's July 2009 opinion was not supported by current objective evidence. (*Id.* at 17, 286.)

After consideration of the evidence in the record, the ALJ found that Giustino assertions regarding the intensity, persistence, and limiting effects of the symptoms were not "entirely credible." (*Id.* at 17.) Subjective symptomatology cannot, by itself, be the basis for a finding of disability. *See* 20 CFR § 404.1529(a). Rather, a claimant must demonstrate, through medical signs and laboratory findings, the existence of an underlying condition reasonably expected to produce the symptomatology alleged. *See* 20 CFR § 404.1529(b). If the objective medical evidence shows a medically determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms, the ALJ then evaluates the intensity and persistence of those symptoms. *See* 20 CFR § 404.1529(c)(1)–(2). Where "the symptoms that plaintiff complains of are greater than the restrictions that can be demonstrated by the objective

evidence, additional factors must be examined," including, *inter alia*, the plaintiff's daily activities and the effectiveness of medication and other treatments used to alleviate symptoms. *Kendall v. Apfel*, 15 F. Supp. 2d 262, 267 (E.D.N.Y. 1998); *see also* 20 CFR § 404.1529(c)(3) (listing daily activities and type and effectiveness of treatment and medication as relevant factors). The ALJ has discretion to evaluate credibility and arrive at an independent judgment, in light of the medical findings and other evidence, regarding the extent of the pain or other symptoms alleged. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("[The ALJ] may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."); *see also Kendall*, 15 F. Supp. 2d at 267 ("The Commissioner does not have to accept plaintiff's subjective testimony about her symptoms without question. Plaintiff's impairment must be compared to objective medical evidence to determine whether a disability exists." (internal citations omitted)).

Here, Giustino alleged difficulty with lifting, sitting, standing, walking, climbing stairs, kneeling, squatting, reaching, using hands, hearing, doing "heavy" household work, and driving long distances. (Admin. R. 37–38, 174–177.) However, the objective medical evidence did not corroborate Giustino's subjective symptomatology to the extent alleged. (*Id.* at 17.) *See also* 20 CFR § 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."). For example, although Giustino complained of numerous limitations, both his treating physician, Dr. Magno, and consultative examiner, Dr. Chow, opined that he had no physical limitations. (Admin. R. at 210–16, 217–20.) Furthermore, physical examination findings from Dr. Chow and Dr. Magno were unremarkable, including findings that Giustino had: full range of motion; full muscle and

14

grip strength; intact hand and finger dexterity; and no edema, clubbing, or cyanosis. (*Id.* at 215–16, 219.) Moreover, though not determinative, Giustino, by his own admission continued working after the ALJ's decision. (Pl.'s Mem. in Opp'n. (Doc. No. 15) at 8 ("I [] continued doing work after receiving the unfavorable decision from the Administrative Law Judge.").)

Additionally, as the ALJ noted, Giustino's varied activities of daily living were inconsistent with his claims of disability. (Admin. R. at 16.) *See* 20 CFR § 404.1529(c)(3)(i) (ALJ may consider daily activities in evaluating symptoms). Giustino testified that he shopped for groceries, drove several times a week, used public transportation, and walked three miles a day. (Admin. R. at 16, 36–38.) The ALJ found Giustino's lack of need for regular treatment and medication to also count against a finding for disability. (*Id.* at 18.) *See* 20 CFR § 404.1529(c)(3)(iv) (listing measures to relieve symptoms as a factor an ALJ may consider in assessing disability).

Because Giustino did not demonstrate a severe impairment, the ALJ was not required to proceed to the next steps in the sequential analysis. *See* 20 CFR § 404.1520(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step."). Accordingly, the ALJ properly determined that Giustino was not disabled since March 1, 2011. The ALJ's narrative properly and adequately explains his conclusion and develops a sufficient record for the Court to determine that the ALJ's ultimate conclusion was based on substantial evidence.

## CONCLUSION

For the reasons herein, defendant's motion for judgment on the pleadings is granted and this action is dismissed.

The Clerk of Court is respectfully directed to enter judgment accordingly, mail a copy of this Memorandum and Order and the accompanying Judgment to Giustino, note the mailing on the docket, and close this case.

The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

*Roslynn R. Mauskopf*

Dated: Brooklyn, New York
      August 25, 2016

ROSLYNN R. MAUSKOPF
United States District Judge